No. 45,859

Wilbur Ediger, *Appellee*, v. Phyllis R. Ediger, *Appellant.*

(479 P. 2d 823)

filed January 23, 1971.

*H. Dean Cotton,* of McPherson, argued the cause, and *Archie T. MacDonald,* of McPherson, was with him on the brief for appellant.

*Evart Mills,* of McPherson, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

FATZER, J.: May voluntary overpayments of child support be applied to the payment of unpaid and past due installments of alimony? We hold under the circumstances which attend, they may not, and reverse the judgment of the district court.

The parties will be referred to as they appeared in the district court.

The plaintiff and defendant were divorced on August 9, 1963, and the care and custody of their fifteen-year-old daughter, Rochelle, was awarded to the defendant. In awarding child support, the district court ordered,

". . . that the plaintiff pay to the Clerk of this Court as and for the support of said minor child the sum of $150.00 on or before the 5th day of each calendar month hereafter until such child shall become 21 years of age or the court shall hereafter otherwise order."

Permanent alimony was awarded the defendant in the lump sum of $18,000 payable in installments, and in the words of the court,

". . . at the rate of $300.00 to the Clerk of this Court on the 5th day of each calendar month hereafter until paid."

On September 20, 1963, the district court modified the installment payments of alimony, as follows:

"The sum of $18,000 payable at the rate of $214.00 per month for a period of seven years to the Clerk of this Court on the 5th day of each calendar month hereafter until paid."

And it further ordered,

". . . that of the money paid into the Court for child support and alimony that the first $214.00 shall be deemed to be alimony, the balance shall be deemed to be child support. These orders to be effective Sept. 20, 1963."

On February 7, 1964, the district court modified the child support order and directed that:

". . . All future payments of child support should be at the rate of $120.00 per month."

There were no further modifications of the court's orders concerning alimony and child support, either in the manner of payment, or the amount to be paid.

On May 17, 1968, a praecipe for execution was filed and an execution was issued against the plaintiff for $18,000 alimony and due and unpaid child support. The execution was returned on June 17, 1968, endorsed "No Goods."

On May 24, 1968, the plaintiff filed a motion requesting the court to fix and determine the amount of alimony owed to the defendant. He alleged he had paid to the clerk of the district court a total of $9,387.33 which should be applied to alimony awarded to the defendant, and further alleged he had paid $7,508.19 as child support for Rochelle, and attached a report of money paid by him directly to her, or to others on her behalf.

On June 28, 1968, the district court heard the plaintiff's motion with respect to payments made by him to Rochelle. After hearing evidence and argument of counsel, the court found that Rochelle attended college for four years, and during the period from May 6, 1964, and ending on her 21st birthday in May, 1968, when she was graduated, the plaintiff made payments totaling $7,508.19 *directly to Rochelle, or to others on her behalf, and not through the clerk of the district court.* The court adjudged that the amount of money paid directly to Rochelle be credited to child support theretofore ordered paid to her from time to time.

On July 26, 1968, the plaintiff's motion of May 24, 1968, was further heard by the district court to determine the amount of alimony owed to the defendant. At the hearing, the parties agreed the total child support ordered by the court to be paid by the plaintiff for the support of Rochelle from August 9, 1963, until she became 21 years of age, was $7,080. They further agreed that the total amount of alimony which accrued and became payable upon the $18,000 alimony judgment in favor of the defendant from August, 1963, to June 30, 1968, was $12,769.33. After hearing evidence and argument of counsel, the court found that during the period commencing August 12, 1963, and ending June 30, 1968, the plaintiff made payments of alimony and child support *through the clerk's office* in the amount of $8,887.33.

The court made further findings of fact, conclusions of law, and entered judgment as follows:

"5. Under the order of the Court dated September 20, 1963, the first $214.00 paid by the plaintiff on said judgments shall be deemed alimony and the additional shall be deemed child support. In equity and justice the payments made by plaintiff, whether to the Clerk of the Court or to Rochelle Ediger shall be deemed as payments on such judgments in accordance with said order. The overage in payments, if any, should be applied one-half to the alimony judgment and one-half to the judgment for child support. The order of this Court made on June 28, 1968, in so far as it conflicts with this finding is set aside and vacated.

"6. After making such application of payments, plaintiff is entitled to total credits of $16,395.52 upon said judgments in favor of the defendant totaling $25,080.00 and there is a balance of $8,684.48 on said judgments still to be paid by the plaintiff to defendant. The remaining amount due upon the defendant's judgment for child support is $2,272.71 of which $2,272.71 is in arrears as of June 30, 1968. The remaining amount due upon defendant's judgment for alimony is $6,411.77 of which $1,181.10 is in arrears as of June 30, 1968."

The effect of the district court's judgment was to allocate or credit approximately $5,000 theretofore paid as child support by the plaintiff to past due and unpaid installments of alimony, which thereby deprived the defendant of that much of her judgment for alimony which was in arrears.

It has been the contention of the defendant throughout this litigation that of the payments made by the plaintiff *through the clerk of the district court,* the first $214 per month should be applied to alimony, and the balance should be applied to child support, and that when the total of plaintiff's payments of $8,887.33 [as found by the district court] are applied pursuant to the court's order of September 20, 1963, the sum of $6,554.84 was paid as alimony, and the sum of $2,323.49 was paid as child support to and including June 30, 1968, leaving an arrearage of alimony of $6,214.49.

The defendant further contends that if the total of payments made directly to Rochelle, or to others on her behalf, may be applied as a credit on the court's order for child support there results an overpayment of child support in the amount of $2,751.68, and argues that such overpayment was voluntary and in effect a gift or gratuity to Rochelle and, in any event, may not be applied upon past due and unpaid installments of alimony.

It frequently occurs that a father who is ordered to pay child support through the clerk of the district court fails to comply with the order for periodic payments, but makes payments in some manner directly to the minor child or children for their welfare

and benefit. There appears to be conflict of authority as to whether a divorce court has the jurisdiction to credit the arrearage of a child support judgment with payments made by the father directly to minor children, or to others on their behalf. Generally speaking, the father is required to make child support payments as directed by the court in the divorce decree, and he should not be permitted to vary the terms of the decree to suit his convenience or otherwise disregard the court's order. (*Bradley v. Fowler,* 30 Wash. 2d 609, 192 P. 2d 969, 2 A. L. R. 2d 822; *Roach v. Oliver,* 215 Iowa 800, 244 N. W. 899; *Harbour v. Harbour,* 313 S. W. 2d 830 [Ark.]; *Campbell v. Campbell,* 223 Ky. 836, 4 S. W. 2d 1112; *Newton v. Newton,* 202 Va. 515, 118 S. E. 2d 656; *Fearon v. Fearon,* 207 Va. 927, 154 S. E. 2d 165; *Wills v. Glunts,* 222 Ga. 647, 151 S. E. 2d 760.) In *Bradley v. Fowler,* supra, it was said:

". . . If, under such a decree as we have here before us, the father could refuse to make the payments required of him and, in an attempt to justify such refusal, show that he had expended certain sums of money on his children . . . it is evident there would be continuous trouble and turmoil. If a party to such a decree is not satisfied with its provisions relative to the custody of the children, or payments required to be made for their support, such party may always come into court and ask for a modification of the decree." (l. c. 620.)

In *Wills v. Glunts,* supra, it was said:

". . . To permit him to increase the amount of the monthly payments fixed by the decree at one time, discontinue them at another and require an adjustment of the differences in the future could and most likely would result in injury and serious disadvantage to his children. Decrees for child support should be strictly complied with and credit should not be allowed for overpayments voluntarily made. This is based on the principle that such overpayments are gratuities for which the children should not be required to account . . ." (l. c. 649.)

This court has expressed the view that where a district court assumes jurisdiction to determine a father's claim for credit on arrearage of child support in the form of voluntary payments made in summer months when there was no obligation to pay under the order, and there was no showing in the record that they were to be applied on payments he was obligated by the order to make, it was error to allow him credit for such payments as an offset against those which were due and unpaid. (*Hains v. Hains,* 187 Kan. 379, 357 P. 2d 317.) Such extra money paid in the summer months was deemed to be gratuitous and in effect a gift. See *Koons v. Koons,* 190 Kan. 65, 372 P. 2d 62.

On the other hand, there are numerous decisions where courts have held that special considerations of an equitable nature may justify a court in crediting voluntary payments in the child's behalf, where such payments, although made in variance with the requirements that they be made through the clerk of the district court, constitute a substantial compliance with the spirit and intent of the child support order, and can be done without injustice to the mother. (*Jackson v. Jackson*, 306 Ky. 715, 209 S. W. 2d 79; *Schlom v. Schlom*, 149 Miss. 111, 115 So. 197; *Mooty v. Mooty*, 131 Fla. 151, 179 So. 155; *Mason v. Mason*, 148 Ore. 34, 34 P. 2d 328; *Briggs v. Briggs*, 178 Ore. 193, 165 P. 2d 772; *State ex rel. Meins v. Sup'r Ct.*, 159 Wash. 277, 292 Pac. 1011.) See, also, 27B C. J. S., Divorce, § 321 (1), p. 636. The question of what constitutes substantial compliance differs of course upon the circumstances of each individual case; and it is to be noted that in many cases where courts have assumed jurisdiction to determine the merits of the father's claim, credit for voluntary payments has been denied. (2 A. L. R. 2d 831, 833, Anno.)

The latter group of authorities holding that courts have basic jurisdiction to credit arrearages when equitable principles demand it, tend to fall under one general consideration, namely, the implied or apparent consent of the mother who occupies the position of parent-trustee, to the payment of support money in a manner other than as ordered by the district court. In *Briggs v. Briggs*, supra, it was said:

"In view of *the apparent consent* of the plaintiff and the equities of the situation, the defendant will be allowed credit against his accrued indebtedness for the support of the children in the sums of $900 and $660 being the amounts which he should have paid to the plaintiff, during the time the children were in college, under the terms of the decree . . ." (l. c. 207, 208.) (Emphasis supplied.)

In *Mooty v. Mooty*, supra, it was said:

"In our effort to do substantial justice as between the parties, we believe the lower court should have allowed the expenses of the daughter paid by the appellant while a student at college to be applied as against the item of $752.50 for support and maintenance of the children, and for his failure or omission so to do this portion of the decree appealed from is reversed." (l. c. 157.)

In 24 Am. Jur. 2d, Divorce and Separation, § 872, p. 992, it is said:

". . . Where children attend college with the consent of their mother, and their father pays sums to the college or to the children for the payment of college and living expenses which substantially exceed the sums due under the

divorce decree, the court may give him credit for the payments of the installments of child support falling due while they attend college."

However, even a court of equity, in an effort to do equity, is not justified in offsetting against due and unpaid child support payments required to be made under a divorce decree, the father's voluntary payments made directly to the daughter while she was a student at college which exceeded the amount required to be paid for her support under such order. (*Mooty v. Mooty,* supra.) Certainly there is nothing in the law which prevents a divorced father from being more generous in providing for the support and education of his daughter than the court has ordered.

In the instant case, the decree of divorce did not provide for, and it is apparent the parties did not contemplate at that time, the additional expense of a college education for Rochelle. The plaintiff, appreciating the advantages of a college education, made the necessary financial sacrifices, and Rochelle was graduated from college. If a credit or offset is allowed for monies paid directly to Rochelle while she was in college, as against child support ordered to be paid for her support and maintenance, now shown as due and unpaid, it is apparent to us there would be a substantial compliance with the spirit and intent of the order of support, and at the same time, there would be no manifest injury to the defendant.

In view of the apparent consent of the defendant that Rochelle attend college, which would necessarily require more financial aid than $120 per month allowed by the court for her support and maintenance, and considering the equities of the situation, we are of the opinion the district court correctly concluded on June 28, 1968, that plaintiff's payments made directly to Rochelle while she was a student at Kansas State University, were properly credited against due and unpaid child support payments, and that it erred when it applied only one-half of the total of such payments, together with other moneys paid by the plaintiff through the clerk of the court, to due and unpaid child support installments. Applying the total of those payments to the total amount due under the child support order, the plaintiff has satisfied the purposes for which that order was made and is entitled to be relieved from making further payments thereunder, and has paid an excess of $2,751.68 which must be regarded as voluntary and in effect a gift or gratuity to Rochelle.

The defendant vigorously urges the district court erred in applying the amount of $2,751.68 against the arrearage of her judgment for alimony. As indicated, the parties agreed that there was $12,-769.33 due and unpaid on the defendant's judgment for alimony as of June 30, 1968. When the court's order of September 20, 1963, is applied to the total of the monthly payments the plaintiff made through the clerk of the district court in the sum of $8,887.33, $6,554.84 was paid as alimony, leaving a balance of $6,214.49 due and unpaid on her judgment for alimony.

There is a distinction between alimony awarded to a divorced wife and support money for a child or children of the marriage (2 Nelson, Divorce and Annulment, 2d Ed. [Rev. volume], § 14.75, p. 102); the former is governed by statutory enactment (K. S. A. 1970 Supp. 60-1610 [c]), and the father's duty to support his children naturally and properly is not suspended by the divorce of the parents. (27B C. J. S., Divorce, § 321 [1], p. 630.) In *Hyde v. Hyde*, 143 Kan. 660, 56 P. 2d 437, this court said:

". . . a sum decreed to be paid to a mother for the support of a child whose custody is awarded to the mother is a distinct thing from alimony awarded to a wife in a divorce action . . ." (l. c. 665, 666.)

Alimony is an allowance for support and maintenance of the divorced wife, or, as has been said, a substitute for marital support. It is an allowance which a husband may be compelled to pay to his former wife for her maintenance after there has been a divorce. (*Hendricks v. Hendricks*, 136 Kan. 69, 12 P. 2d 804; *Garver v. Garver*, 184 Kan. 145, 334 P. 2d 408; 24 Am. Jur. 2d, Divorce and Separation, § 514, pp. 640, 641.) Alimony is awarded not as a penalty, but as a substitute for the husband's duty to provide his former wife with adequate support.

On the other hand, payments ordered to be made for child support rest on statutory and parental relationship and are for the support, maintenance and education of minor children of divorced parents. A divorce decree giving the mother custody and monthly allowances "for the support" of minor children of the marriage cannot be construed as an award of permanent alimony. (*Hyde v. Hyde*, supra; *Noonan v. Noonan*, 127 Kan. 287, 273 Pac. 409.) However, the mother, having custody, is a parent-trustee and has the obligation and right to say how and in what manner the funds paid for child support shall be spent.

Divorce ends the marital relationship and a judgment for permanent alimony is a final determination of the rights of the parties with respect to alimony. There is no need here to further pursue the effect of such an award as now prescribed in K. S. A. 1970 Supp. 60-1610 [c]. Child support ordered paid by the final decree may be modified whenever circumstances render such change proper, but the modified order operates prospectively, and, whether modified or not, past due installments become final judgments as of the dates due and may be collected in the same manner as other judgments. (*Brieger v. Brieger,* 197 Kan. 756, 421 P. 2d 1.) Likewise, due and unpaid installments of alimony awarded to the wife by a final decree, become a vested right and become final judgments, and may be collected as other judgments of courts of record in this state. (*Edwards v. Edwards,* 182 Kan. 737, 743, 324 P. 2d 150; *Conway v. Conway,* 130 Kan. 848, 288 Pac. 566; *Sharp v. Sharp,* 154 Kan. 175, 177, 117 P. 2d 561.) Final judgments for alimony and for child support are distinct and separate judgments and payment of one does not result in the payment of the other.

The district court's judgment in this case did not modify alimony awarded the defendant in the total amount of $18,000, but applied voluntary payments made by the plaintiff in the form of child support to the due and unpaid installments of alimony. That was error. It is clear under the record that payments made directly to Rochelle were not payments of alimony made to the defendant. Such payments did not reduce the defendant's judgment accruing each month under the order of the court requiring the plaintiff to pay installments of alimony.

As indicated, a sum ordered to be paid for child support is a distinct thing from alimony awarded to a wife in a divorce case, and voluntary payments which would satisfy the court's order for child support, do not build a reserve which may be applied upon the wife's judgment for alimony. (27B C. J. S., Divorce, § 321 [1], pp. 636, 637.) We are of the opinion the district court erred in concluding there was an arrearage of only $1,181.10 due on the defendant's judgment for alimony as of June 30, 1968, when the correct amount should have been $6,214.49.

The judgment of the district court is reversed with directions to enter judgment in accordance with the views expressed in this opinion.

It is so ordered.